**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **JASON DIEHL**, on behalf of himself and others similarly situated, | : | |
| | : | CASE NO. |
| Plaintiff, | : | |
| v. | : | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| **BASF CORPORATION,** | : | **JURY DEMAND** |
| Defendant. | : | |

**PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND OHIO LAW**

Named Plaintiff Jason Diehl, individually and on behalf of others similarly situated, files his Collective and Class Action Complaint against Defendant BASF Corporation for its failure to pay its employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA") and Ohio law. 29 U.S.C. §§ 201, *et seq.*; and O.R.C. § 4111.03 ("Ohio Wage Act"). The FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The Ohio Wage Act claim is brought as a class action pursuant to Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to the FLSA, the Ohio Wage Act, and 28 U.S.C. § 1331.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio over which this Court maintains supplemental subject matter jurisdiction because the additional claims are part of the same case or controversy and share a common nucleus of operative fact with the FLSA claim.

3. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant is incorporated in Delaware, and because Defendant is subject to personal jurisdiction in this District.

## II. PARTIES

### A. Named Plaintiff

4. Named Plaintiff is an individual, a United States citizen, and a resident of Ohio.

5. Named Plaintiff worked for Defendant at its facility in Greenville, Ohio, as an hourly, non-exempt employee as defined in the FLSA and the Ohio Wage Act from approximately 2012 until August 2025. His most recent role was that of a Material Handler. In this role, and in all his other roles with Defendant, Named Plaintiff routinely handled and/or was exposed to chemicals and other hazardous materials, as were similarly situated production/manufacturing employees.

6. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendant in furtherance of its business developing, manufacturing, and selling chemical products.

7. During his employment, Named Plaintiff worked 40 or more hours in one or more workweek(s).

8. Named Plaintiff brings this action on behalf of himself and other similarly situated employees and has given his written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's *Consent to Join* form is being filed along with this Complaint, pursuant to 29 U.S.C. § 216(b), and is attached hereto as **Exhibit A**.

**B. Defendant**

9. Defendant is a domestic corporation that is incorporated in Delaware.

10. Defendant is a global chemical company that develops chemical solutions across six "segments": Chemicals, Materials, Industrial Solutions, Nutrition & Care, Surface Technologies, and Agricultural Solutions.[1]

11. Defendant currently owns, operates, and/or manages approximately 46 facilities across the United States.[2]

12. Defendant was and continues to be an "employer" of employees at all its locations as defined herein, and/or for the purposes of the FLSA and the Ohio Wage Act.

13. Defendant is a joint employer and/or a single integrated enterprise of employees at BASF-related facilities and subsidiaries, which it in turn owns, operates, and/or manages.

14. At all relevant times, Defendant has had direct or indirect control and exercised authority over Named Plaintiff and other similarly situated employees' working conditions.

15. At all relevant times, Defendant has had direct or indirect control and authority over matters governing the essential terms and conditions of employment for Named Plaintiff and other similarly situated employees at all locations owned, operated, and managed by Defendant. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and other similarly situated employees.

16. At all relevant times, Defendant has had the authority to hire and fire Named Plaintiff and other similarly situated employees, supervise and control their work schedules and conditions, determine their rate and method of pay, and/or maintain their employee records.

---

[1] *Who We Are*, BASF, https://www.basf.com/global/en/who-we-are (last visited June 10, 2026).
[2] *Locations of the BASF Group*, BASF, https://www.basf.com/us/en/who-we-are/organization/locations (last visited June 10, 2026).

17. Upon information and belief, Defendant applies or causes substantially the same employment policies, practices, and procedures to be applied to its employees at all its locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

18. Although Named Plaintiff and other similarly situated employees are paid by one of Defendant's subsidiaries or other interrelated entities, Defendant is their employer, joint employer, and/or a single integrated enterprise.

19. Defendant maintains interrelated operations among its entities, centralized control of labor relations, common management and ownership, and financial control.

20. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated employees to work. The work that Named Plaintiff and other similarly situated employees performed was for Defendant's benefit.

21. At all relevant times, Defendant, as a corporation developing, producing, and selling chemical solutions, was an enterprise engaged in commerce or the production/manufacturing of goods for commerce within the meaning of the phrase as used in the FLSA.

22. At all relevant times, Defendant has had employees engaged in commerce or in the production/manufacturing of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce.

23. At all relevant times, Defendant has had an annual gross volume of sales made, or business done, of not less than $500,000 each year.

24. Upon information and belief, Defendant, at all relevant times, was fully aware that it was legally required to comply with the wage and overtime laws of the United States and the State of Ohio.

## III. FACTS

25. Named Plaintiff and Defendant's other hourly production/manufacturing employees are hourly, non-exempt employees who are entitled to overtime compensation.

26. Named Plaintiff and Defendant's other hourly production/manufacturing employees are involved in the manufacture and production of Defendant's various chemicals solutions. As such, Named Plaintiff and other similarly situated hourly production/manufacturing employees routinely handle chemicals and other hazardous materials while performing their respective job duties.

27. Named Plaintiff and Defendant's other similarly situated production/manufacturing employees regularly arrive at work prior to the scheduled start of their shifts and leave after the scheduled end of their shifts.

28. During their employment with Defendant, Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to badge into their respective facilities before the scheduled start of their shifts.

29. Prior to the scheduled start of their shifts but after swiping their badges, Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to remove their street clothes and shoes and gather and don their work shoes and chemical/flame-resistant safety clothing. They were also required to (1) gather and don other safety equipment, including, a hard hat and safety glasses and (2) gather necessary work tools and equipment, such as a radio.

30. Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to don and doff their safety shoes, clothing, and protective equipment at their place of work. They were not permitted to take their clothing and personal protective equipment home. Likewise, all work tools and equipment were required to remain on Defendant's premises.

31. The safety shoes, clothing, and other protective equipment that Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to don and doff were specialized protective gear made necessary by the hazardous nature of their work of handling chemicals and other hazardous materials. This gear was required by Defendant's own policies and by applicable workplace health and safety regulations and laws.

32. Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to be fully dressed in their safety shoes, clothing, and other protective equipment when they reported to their scheduled shift.

33. After donning their safety shoes, clothing, and other protective equipment, Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to engage in a shift turnover/shift relief process with the outgoing shift. This process consisted of speaking with the outgoing shift about the state of production, problems or hazards to be aware of, and what might need to be done during the upcoming shift.

34. The pre-shift work described above resulted in Named Plaintiff and other similarly situated hourly production/manufacturing employees performing integral and indispensable work prior to the scheduled start of their shifts.

35. Despite arriving before the scheduled start of their shifts and beginning the above-described integral and indispensable pre-shift before the scheduled start of their shifts, Defendant

did not pay Named Plaintiff and other similarly situated production/manufacturing employees for this pre-shift work.

36. Similarly, at the end of their shifts, Named Plaintiff and other similarly situated production/manufacturing employees were required to engage in the shift turnover/shift relief process with the incoming shift, doff their safety shoes, clothing, and other protective equipment, change back into their street clothes and shoes, and return all work equipment before leaving Defendant's facility.

37. The post-shift work described above resulted in Named Plaintiff and other similarly situated hourly production/manufacturing employees performing integral and indispensable work after the scheduled end of their shifts.

38. Despite staying after the end of their scheduled shifts and performing the above-described integral and indispensable post-shift work, Defendant did not compensate Named Plaintiff and other similarly situated hourly production/manufacturing employees for this post-shift work.

39. Named Plaintiff and other similarly situated hourly production/manufacturing employees regularly performed uncompensated, integral, and indispensable pre-shift and post-shift work each day. This pre-shift and post-shift work was not occasional, sporadic, or insubstantial; it occurred every shift that Named Plaintiff and other similarly situated hourly production/manufacturing employees worked throughout their employment.

40. Because donning the required safety clothing, shoes, and other protective gear was integral and indispensable to their work and was the first principal activity of their workday, the workday of Named Plaintiff and other similarly situated hourly production/manufacturing employees began when they started donning that gear and did not end until they finished doffing

it. All time in between—including the shift turnover/shift relief process and any time spent walking to and from and waiting at their work areas—was part of a single continuous workday and was compensable. Recording this worktime was administratively practicable.

41. Thus, during all relevant times, Defendant failed to pay Named Plaintiff and other similarly situated hourly production/manufacturing employees for all overtime work performed because of their policy or practice of not paying employees for pre- and post-shift work.

42. Named Plaintiff and other similarly situated hourly production/manufacturing employees regularly worked more than 40 hours per workweek but were not paid one-and-one-half times (1.5x) their regular rates of pay for all overtime hours worked as a result of Defendant's unlawful policy or practice described above.

43. Thus, Defendant's policies described herein resulted in unpaid overtime for Named Plaintiff and other similarly situated production/manufacturing employees.

44. During relevant times, Defendant knew of and acted willfully regarding its conduct described herein. Defendant knew Named Plaintiff and others similarly situated worked overtime without compensation for all overtime hours worked.

45. Defendant is a large and sophisticated employer with dedicated human resources, payroll, and legal functions, and was at all relevant times aware of its obligations under the FLSA and the Ohio Wage Act, including the obligation to pay non-exempt employees for all hours worked and to pay overtime for hours worked in excess of 40 in a workweek.

46. Defendant designed, implemented, and controlled its payroll systems that applied to Named Plaintiff and other similarly situated hourly production/manufacturing employees. Defendant's own badge-swipe records showed that these employees were present and beginning

work before the scheduled start of their shifts, yet Defendant deliberately compensated them only for their scheduled shift hours rather than for the time its own records showed they were working.

47. Despite this knowledge, Defendant adopted and maintained a uniform policy or practice of not compensating Named Plaintiff and other similarly situated hourly production/manufacturing employees for their pre- and post-shift work (described above) and did not take reasonable steps to determine whether that practice complied with the FLSA and the Ohio Wage Act. Defendant's conduct was therefore willful or, at a minimum, was carried out with reckless disregard for whether its pay practices violated those laws.

48. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

49. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

50. Defendant failed to track, keep, or transmit the hours accurately worked each day by Named Plaintiff and other similarly situated production/manufacturing employees.

51. Defendant willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed. The incorrect and/or incomplete

records had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff and other similarly situated production/manufacturing employees.

52. Thus, Defendant willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

53. Upon information and belief, Defendant applied these same policies to all its hourly, non-exempt production/manufacturing employees at all its locations.

54. As a result of Defendant's companywide policy and/or practice described herein, Defendant knew or had reason to know that it was not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all overtime hours worked.

55. Defendant is in possession and control of the necessary documents and information from which Named Plaintiff would be able to calculate damages, and/or Defendant otherwise failed to keep such records.

## IV. FLSA COLLECTIVE ALLEGATIONS

56. Named Plaintiff brings his FLSA overtime claims pursuant to 29 U.S.C. § 216(b) as a representative action for himself and all other similarly situated production/manufacturing employees of the opt-in collective. The FLSA collective consists of the following:

> **All current and former hourly, non-exempt production/manufacturing employees at all of Defendant's locations who were paid for 40 or more hours of work in any workweek beginning three years before the filing date of this Complaint (hereinafter the "FLSA Collective" or "Potential FLSA Collective Members").[3]**

[3] Named Plaintiff reserves the right to amend his definition of whom he seeks to send Court-authorized notice of this action to upon further investigation and discovery.

57. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees.

58. In addition to Named Plaintiff, the Potential FLSA Collective Members have been denied proper overtime compensation due to the companywide time and pay policies and/or practices described herein. Defendant failed to meet the minimum requirements of the FLSA by not paying Named Plaintiff and the Potential FLSA Collective Members overtime wages for all overtime hours worked. Named Plaintiff is representative of those other similarly situated production/manufacturing employees and is acting on behalf of their interests as well as his own in bringing this action.

59. The identities of the Potential FLSA Collective Members are known to Defendant and are readily identifiable through Defendant's records. These individuals may readily be notified of this action and allowed to opt in to it pursuant to 29 U.S.C. § 216(b) for the collective adjudication of their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

60. The net effect of Defendant's policies and practices is that Defendant willfully failed to fully and properly pay Named Plaintiff and the Potential FLSA Collective Members overtime wages. Thus, Defendant enjoyed substantial ill-gained profits at the expense of Named Plaintiff and the Potential FLSA Collective Members.

## V. RULE 23 CLASS ALLEGATIONS

61. Named Plaintiff brings his Ohio Wage Act claims pursuant to Rule 23 as a class action on behalf of himself and all other members of the following class:

> **All current and former hourly, non-exempt production/manufacturing employees at all of Defendant's**

> **locations who were paid for 40 or more hours of work in any workweek beginning two years before the filing date of this Complaint (hereinafter the "Ohio Rule 23 Class" or "Ohio Rule 23 Class Members").**

62. During relevant times, Named Plaintiff and the Ohio Rule 23 Class Members worked at least 40 hours per workweek, but they were not paid overtime premium for all hours worked in excess of 40 because of Defendant's policies and/or practices described herein.

63. The Ohio Rule 23 Class, as defined above, is so numerous that joining all members is impracticable.

64. Named Plaintiff is a member of the Ohio Rule 23 Class, and his claims for unpaid wages are typical of the claims of the Ohio Rule 23 Class.

65. Named Plaintiff will fairly and adequately represent the interests of the Ohio Rule 23 Class.

66. Named Plaintiff has no interest that is antagonistic to or in conflict with the interests of the Ohio Rule 23 Class that he has undertaken to represent.

67. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Rule 23 Class.

68. Questions of law and fact are common to the Ohio Rule 23 Class.

69. Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistency or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its non-exempt employees.

70. Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Rule 23 Class.

71. Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Rule 23 Class predominate over questions affecting individual

members of the Ohio Rule 23 Class and because a class action is superior to available alternative methods for the fair and efficient adjudication of this litigation.

72. Questions of law and fact that are common to the Ohio Rule 23 Class include but are not limited to: (a) whether Defendant violated the Ohio Wage Act by failing to properly pay the Ohio Rule 23 Class all overtime compensation they earned; (b) whether Defendant's violations of the Ohio Wage Act were knowing and willful; (c) what amount of unpaid and/or withheld overtime compensation is due to Named Plaintiff and other members of the Ohio Rule 23 Class because of Defendant's violations of the Ohio Wage Act; and (d) what amount of liquidated damages and prejudgment interest is due to the Ohio Rule 23 Class members for unpaid overtime or other compensation that was withheld or otherwise not paid to them.

73. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's and the Ohio Rule 23 Class's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Named Plaintiff and counsel are not aware of any pending Ohio litigation on behalf of the Ohio Rule 23 Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damage sustained by individual members is modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## VI. CAUSES OF ACTION

### COUNT I:
### FLSA COLLECTIVE ACTION FOR UNPAID OVERTIME

74. All of the preceding paragraphs are realleged as if fully rewritten herein.

75. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

76. The FLSA requires that employees receive overtime compensation for hours worked in excess of 40 per workweek. 29 U.S.C. § 207(a)(1).

77. During relevant times, Defendant employed Named Plaintiff and the FLSA Collective Members.

78. Named Plaintiff and the FLSA Collective Members regularly worked in excess of 40 hours in workweeks.

79. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to compensate them for all overtime wages earned because of Defendant's policies and/or practices described herein.

80. Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

81. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

82. The exact total amount of compensation that Defendant has failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

83. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks

unpaid overtime and other compensation, liquidated damages, interest, attorneys' fees, and all other remedies available on behalf of himself and the FLSA Collective Members.

**COUNT II:**

**O.R.C. § 4111.03 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME**

84. All of the preceding paragraphs are realleged as if fully rewritten herein.

85. This claim is brought under the Ohio Wage Act.

86. Named Plaintiff and the Ohio Rule 23 Class Members have been or remain employed by Defendant, and Defendant is an employer covered by the overtime requirements under the Ohio Wage Act.

87. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1938." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1) (stating same).

88. Named Plaintiff and the Ohio Rule 23 Class Members worked more than the maximum weekly hours permitted under the Ohio Wage Act but were not paid overtime for all hours worked over 40 in a workweek.

89. Named Plaintiff and the Ohio Rule 23 Class Members were not exempt from the wage protections of the Ohio Wage Act.

90. Defendant's repeated and knowing failures to pay overtime wages to Named Plaintiff and the Ohio Rule 23 Class Members violated the Ohio Wage Act, and, as such, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the Ohio Rule 23 Class Members were entitled.

91. For Defendant's violations of the Ohio Wage Act, by which Named Plaintiff and the Ohio Rule 23 Class Members have suffered and continue to suffer damages, Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest, and attorneys' fees, and all other remedies available on behalf of himself and the Ohio Rule 23 Class Members.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A. Directing Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, remuneration, timekeeping, and related records of the FLSA Collective Members;

B. Directing Defendant to provide all contact information, including but not limited to names, dates of employment, mailing addresses, telephone numbers, and email addresses of the FLSA Collective Members;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Certifying the proposed Ohio Rule 23 Class under the Ohio Wage Act;

E. Finding that Defendant failed to keep accurate records in accordance with the Ohio Wage Act and that, as a result, Named Plaintiff, the FLSA Collective, and the Ohio Rule 23 Class are entitled to prove their hours worked with reasonable estimates;

F. Awarding to Named Plaintiff and the FLSA Collective Members who join this case unpaid overtime wages to be determined at trial together with any liquidated damages allowed by the FLSA;

G. Awarding to Named Plaintiff and the Ohio Rule 23 Class unpaid overtime wages

to be determined at trial together with any liquidated damages allowed by the Ohio Wage Act;

H. Awarding to Named Plaintiff, the FLSA Collective Members who join this case, and the Ohio Rule 23 Class costs, disbursements, and reasonable allowances for fees of counsel and experts as well as reimbursement of expenses and pre and post-judgment interest;

I. Awarding to Named Plaintiff, the FLSA Collective Members who join this case, and the Ohio Rule 23 Class any such other and further relief as the Court deems just and proper;

J. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

K. Rendering a judgment against Defendant for all damages, relief, or any other recovery whatsoever.

**JURY DEMAND**

Named Plaintiff requests a trial by a jury on all triable issues.

Dated: June 10, 2026

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Of Counsel:

Matthew J.P. Coffman
Shannon M. Draher
Adam C. Gedling
Tristan T. Akers
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
sdraher@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those Similarly Situated*